Jason R. Naess, ISB No. 8407
Rhett M. Miller, ISB No. 11163
PARSONS, SMITH, STONE,
LOVELAND & SHIRLEY, LLP
137 West 13th Street
P. O. Box 910
Burley, ID  83318
jason@pmt.org
rhett@pmt.org
Telephone: (208) 878-8382
Facsimile:  (208) 878-0146
*Attorneys for R. Wayne Klein,*
*Chapter 11 Plan Administrator for*
*J&J Chemical, Inc., Bankr. No. 17-40037-JDP*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| In Re:<br>JONATHAN PEIRSOL,<br><br>Debtor. | Case No. 19-40782-JDP<br><br>Chapter 11 |
|---|---|

**OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT**

COMES NOW creditor R. Wayne Klein in his capacity as the Chapter 11 Plan Administrator for J&J Chemical, Inc., Bankr. No. 17-40037-JDP ("J&J Chemical Plan Administrator"), by and through counsel, and, pursuant to § 1125, hereby objects to the Third Amended Disclosure Statement filed by Debtor, Dkt. No. 87 (the "May 2020 Disclosure Statement").

Once a bankruptcy case is commenced, acceptance or rejection of a bankruptcy plan may only be solicited once a written disclosure statement, approved by the court as containing adequate information, has been transmitted to holders of claims or interests.  § 1125(b).  For the purposes of the information included in a disclosure statement, "adequate information" is defined as:

> Information of the kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor,
> and a hypothetical investor typical of the holders of claims or
> interest in the case, that would enable such a hypothetical investor
> of the relevant class to make an informed judgment about the plan .
> . . .

§ 1125(a). When determining whether a disclosure statement includes adequate information, the Court is to consider "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." *Id.*

Debtor filed the May 2020 Disclosure Statement on May 7, 2020. Several creditors had objected to the most-recent version of the disclosure statement (the "March 2020 Disclosure Statement," Dkt. No. 59), and the U.S. Trustee had expressed concerns regarding the adequacy of the information contained in that disclosure statement as well. The current version adds little.

The May 2020 Disclosure Statement does not contain adequate information as required by § 1125 in regards to at least the following matters:

1. The information provided in the May 2020 Disclosure Statement in regards to Debtor's assets, particularly as pertaining to the liquidation analysis, is deceptive. Debtor identifies two real property assets: "Debtor's Residence" and a "Leasehold Interest contract with JPB Enterprises." Dkt. No. 87 at 8. The May 2020 Disclosure Statement does not identify any other real property assets owned by Debtor.

At the same time, in identifying personal property assets, the May 2020 Disclosure Statement identifies an asset simply as a "Business Interest." *Id.* Rather than identifying the business interest's fair market value, Debtor indicates the fair market value is "Building on Ash in Blackfoot." *Id.* Debtor does not identify any encumbrances or exemptions in connection with

the business interest asset, and, where in the March 2020 Disclosure Statement, he stated there is $30,000.00 of value in the asset, now Debtor claims there is $35,717.00 in value for the purposes of his liquidation analysis. *Id.*

In the Schedules attached to Debtor's Petition, he identified a real property asset as "50 N. Ash" in Blackfoot, Idaho (the "Ash Property"). Dkt. No. 1, Sch. A/B. As to that asset, Debtor identified the value of the property as $110,000.00 and stated he currently owns the entire property. *Id.* It is believed the Ash Property is the same as the "Business Interest" personal property asset identified in the Disclosure Statement. No exemptions were claimed in regards to the Ash Property in Debtor's schedules, and there are no secured creditors identified as having a security interest in the Ash Property. *See* Dkt. Nos. 1, 29, 54; Sch. C, D.

It is believed Debtor arrived at the $35,717.00 in value by starting at the valuation used by Bingham County for tax purposes, and then deducting amounts he believes are needed for repairs to the building based on quotes he attached to an Objection he filed to the U.S. Trustee's Motion to Convert Case or to Dismiss. *See* Dkt. Nos. 82, 85. In Idaho, "[f]air market value is the amount which would be agreed upon by a willing buyer and a willing seller." *Ada County Highway Dist. V. Magwire*, 662 P.2d 237, 240 (Idaho 1983). The information apparently used by Debtor in arriving at the value he now asserts exists in the property does not demonstrate the property's fair market value. Rather, Debtor's bankruptcy schedules, which were completed under penalty of perjury and identify the property's value at $110,000.00 should be used as the indicator of value. *See In re Roots Rents, Inc.*, 420 B.R. 28, 40-41 (Bankr. D. Idaho 2009).

The May 2020 Disclosure Statement must identify the Ash Property as a real property asset of Debtor, and the liquidation analysis must recognize the Ash Property has a value of

$110,000.00 that would be available in a liquidation so that the Disclosure Statement is consistent with Debtor's schedules and provides adequate information of Debtor's assets.

    2.     On the same date as he filed the March 2020 Disclosure Statement, on March 6, 2020, Debtor amended his Schedule J. Dkt. No. 54. That amendment inflated his expenses, resulting in a reduction in the amount available to creditors under his Plan, with no explanation given as to why the expenses were increasing. Rather, Debtor's expenses should have been reduced.

With the March 2020 and May 2020 Disclosure Statements, Debtor filed a Stipulation with Wells Fargo. Dkt. Nos. 59-5, 87-5. The Stipulation was approved by the Court. Dkt. No. 62. Per the terms of the stipulation, Debtor would make monthly principal and interest payments and monthly escrow payments to Wells Fargo in a total of $2,780.56. Dkt. No. 87-5. Two previous versions of Debtor's Schedule J identified monthly Home Ownership Expenses of $2,780.00, while also identifying monthly real estate taxes of $480.00 and monthly home insurance expenses of $120.00. Dkt. Nos. 1, 29. With the Wells Fargo stipulation, the real estate taxes and home insurance expenses were incorporated into the $2,780.56 amount, and an amendment to reduce the expenses in Schedule J by $600.00 would have been appropriate.

While the March 6, 2020, amendments to Schedule J removed the real estate taxes and home insurance, however, it also, without explanation in the March 2020 Disclosure Statement, increased expenses for Food and Housekeeping Supplies; Medical and Dental Expenses; Charitable Contributions; and Health Insurance when compared to the previous two versions of Schedule J Debtor had filed with the Court. *Compare* Dkt. No. 59-6 *with* Dkt. Nos. 1, 29. The increase in expenses identified in the Schedule J filed on the same day as the March 2020 Disclosure Statement amounted to $1,032.00. So, while Schedule J expenses should have been

reduced by $600, thereby increasing the amount potentially available for distribution under a chapter 11 plan by $600 per month, instead Debtor's total expenses increased by $432.00, which will result in reduced payments to creditors.

The timing of the increased expenses, on the date of the filing of the March 2020 Disclosure Statement, particularly given that Debtor had filed two previous versions of Schedule J which did not include the increased expenses, should have been addressed and explained. Yet, in the May 2020 Disclosure Statement, and even after the U.S. Trustee highlighted the discrepancy in its Motion to Convert, *see* Dkt. No. 82 at 5, Debtor has done nothing to explain the changes or provide adequate information regarding the same. *See* Dkt. No. 87.

3. Debtor, in the General History of the Disclosure Statement, indicates the following:

> Business Interests: In 2018, the Debtor loaned the money to start and became President of JBP Enterprises Inc., a new janitorial services business, doing what he knows best. Debtor's son is the owner, but for all purposes this company as it succeeds will be the engine of this plan. *Debtor set up the company this way due to his legal problems, but he is the one who will reap the benefits and be able to distribute to creditors as it succeeds.* JBP pays a rental income for a building owned by the debtor.

Dkt. No. 87 at 5 (emphasized language is the only language changed from the March 2020 Disclosure Statement).

The J&J Chemical Plan Administrator continues to have concerns that this information does not provide adequate information. Rather, it raises additional questions and concerns. As stated in the J&J Chemical Plan Administrator's objection to the March 2020 Disclosure Statement, to provide adequate information, the amount of funds loaned to JBP Enterprises by Debtor should be identified. Debtor identifies the infusion into JBP Enterprises as a "loan." As such, Debtor's loan to JBP Enterprises should be an asset of Debtor, and should be a receivable

against JBP Enterprises. Presumably, that receivable would have value to the estate, and should be incorporated in the analysis of what Debtor should pay to his creditors and whether those creditors are being treated appropriately under § 1129(a)(7). That analysis cannot properly occur unless and until information regarding the JBP Enterprises loan is adequately provided in the May 2020 Disclosure Statement.

The specifics regarding the loan, including its terms, should be identified so that parties in interest can determine whether there might be a fraudulent transfer or other avoidance action that could be pursued on behalf of the estate.

In addition, no explanation is provided as to how the company has been structured or why, the structure that was used "due to [Debtor's] legal problems," will allow him to be the person that reaps the benefits from the company and to distribute funds to creditors from the company. There is simply insufficient information provided to allow for approval of the May 2020 Disclosure Statement.

4.     Debtor continues to apparently rely on JBP Enterprises as the main source of income to fund his Plan. Dkt. No. 87 at 5. The May 2020 Disclosure Statement identifies increases Debtor claims are shown in some tax returns, somewhere, and identifies what Debtor contends the projected growth of JBP Enterprises will be. *Id.* In spite of previous objections to similar statements, Debtor has not provided any documentation to substantiate the claims of growth identified in the text of the May 2020 Disclosure Statement.

Further, Debtor must disclose how JBP Enterprise's growth will translate "to the maximum relief for creditors." *See id.* Debtor is not the owner of JBP Enterprises, he is only an employee. It is unclear how increased growth by JBP Enterprises, even if Debtor is able to disclose adequate information of such, would improve Debtor's ability to pay his creditors.

Rather, it appears that increased growth by JBP Enterprises, a janitorial services company, would result in damage to at least one of JBP Enterprises' creditors, J&J Chemical, Inc. JBP Enterprises and J&J Chemical are competing businesses in the janitorial services space and, conceivably, any increase in JBP Enterprises' growth would come at J&J Chemical's expense.

Debtor has attached Profit and Loss Statements that he created for JBP Enterprises for the period of March 25 to April 28, 2020, and for that same period in 2019, to his Objection to the U.S. Trustee's Motion to Convert. *See* Dkt. No. 85. He did not file similar information in support of his May 2020 Disclosure Statement. Dkt. No. 87. In connection with his Objection to the U.S. Trustee's Motion to Convert, Debtor suggests that such information shows JBP Enterprises is thriving in the COVID-19 economic climate.

If the self-created snapshot is accepted as being accurate, it does not provide any useful information in determining the long-term feasibility of JBP Enterprises or how JBP will generate income for Debtor that will be sufficient to allow Debtor to meet his obligations under his proposed plan. Debtor's March 2020 Monthly Operating Report claims Debtor has had a total post-petition net cash income of $25,043.33. Dkt. No. 77. Yet, as noted by the U.S. Trustee in its Motion to Convert, the account balance in Debtor's Debtor-in-Possession account has changed little over the duration of the case, and, at the end of March 2020, had only $3,634.88 in the account. *See id.* At the very least, that information demonstrates that, regardless of JBP Enterprises' performance, Debtor's finances are not such as would sustain the proposed plan's feasibility.

Debtor has not provided information in connection with the May 2020 Disclosure Statement for a finding there is adequate information that (1) JBP Enterprises is growing and will

continue to grow; and (2) any growth by JBP Enterprises will translate to an increase in Debtor's ability to pay his creditors.

5. The Disclosure Statement, in regards to the section relating to "Major Asset Dispositions" provides:

> No major assets have been voluntarily disposed of by Debtor, except in the ordinary course of the Debtor's business or as authorized by the Court.

Dkt. No. 87 at 6. As stated, that information is inaccurate or, at least, misleading.

It is believed that, in or around September 2016, Debtor transferred all of his interest in Silver Rail, Inc., to his wife. That transfer is not identified within the May 2020 Disclosure Statement, and the transfer, along with information regarding Silver Rail's assets and value at the time of the transfer and the value received by Debtor in exchange for the transfer, should be identified and disclosed so that parties in interest may be adequately informed regarding the same.

Additionally, the specifics regarding the formation of JBP Enterprises, how that company ended up owned by Debtor's son, an indication of whether Debtor's son has invested any funds into JBP Enterprises, and a description of Debtor's son's role with the company should be disclosed so that parties may evaluate whether JBP Enterprises is, potentially, an asset of the estate.

In spite of similar objections raised in response to the March 2020 Disclosure Statement, Debtor has not denied such transfers occurred or otherwise responded to the objections with any explanation of the transfers. As such, the May 2020 Disclosure Statement is lacking in adequate information.

Finally, the Debtor, in its liquidation analysis, indicates "there are a number of preference actions that may be pursued from J&J Chemical, all of which will go directly to unsecured creditors." Dkt. No. 87 at 9. Debtor does not identify what those actions are. The J&J Chemical Plan Administrator has been overseeing the operation of J&J Chemical for a period of more than a year prior to Debtor's bankruptcy filing. And, Debtor has not made a single payment to J&J Chemical during the entire period the J&J Chemical Plan Administrator has been involved with that company. There are no potential avoidable preference actions Debtor could bring against J&J Chemical. As such, the May 2020 Disclosure Statement, which provides there "are a number" of such actions, is blatantly misleading and, rather than provide interested parties with adequate information, deceives them into believing the prospects for repayment under Debtor's plan are better than they really are.

WHEREFORE, for the foregoing reasons, the J&J Chemical Plan Administrator requests the Court deny approval of the Disclosure Statement and enter such other relief as the Court deems appropriate.

DATED May 14, 2020.

PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, LLP

_/s/ Jason R. Naess_
Jason R. Naess
Counsel for the J&J Chemical Plan Administrator

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 14, 2020, a copy of the foregoing was filed with the Court via CM/ECF, and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

Lesley Bohleber on behalf of Creditor Wells Fargo Bank, N.A.
ecfidb@aldridgepite.com, llueke@ecf.courtdrive.com

Daniel C Green on behalf of Creditor Phillip Quayle
dan@racinelaw.net, mcl@racinelaw.net

John T Morgan on behalf of U.S. Trustee US Trustee
john.t.morgan@usdoj.gov

Jason Ronald Naess on behalf of Creditor R. Wayne Klein
jason@pmt.org

Aaron J Tolson on behalf of Debtor Jonathon Peirsol
ajt@aaronjtolsonlaw.com

US Trustee
ustp.region18.bs.ecf@usdoj.gov

Any other CM/ECF Registered Participants not identified herein.

                              **PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, LLP**

                              Jason R. Naess
                              Counsel for the J&J Chemical Plan Administrator